# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JACOB YODER, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. LKG-23-1365 |
| CONAWAY RACING & TRUCKING, LLC, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

## MEMORANDUM OPINION

Plaintiffs Jacob Yoder, Shawn Yoder, and Natasha Yoder assert negligence claims arising from a motor vehicle accident against Defendants Conaway Racing & Trucking LLC (Conaway) and Aaron J. Pacheco (collectively, Conaway Defendants); Builders FirstSource, Inc.; Builders FirstSource – Atlantic Group LLC; and ProBuild Company LLC doing business as Builders FirstSource (collectively, BFS Defendants); and seek damages, costs, and interest.[1] ECF No. 52. On June 11, 2024, the Honorable Lydia Kay Griggsby referred this action to the undersigned for all discovery matters pursuant to 28 U.S.C. § 636. ECF No. 87. As relevant here, pending before the Court is Plaintiffs' motion for sanctions.[2] ECF No. 149. The motion is

---

[1] Plaintiffs initially filed this action in the Court of Common Pleas of the Commonwealth of Pennsylvania, County of Philadelphia on July 29, 2022. ECF Nos. 1 ¶ 2; 1-3. On September 13, 2022, Defendants Builders FirstSource, Inc., Builders FirstSource – Atlantic Group LLC, and ProBuild Company LLC doing business as Builders FirstSource (BFS Defendants) removed the case to the United States District Court for the Eastern District of Pennsylvania on the basis of diversity jurisdiction. ECF No. 1 ¶¶ 10–23. On May 22, 2023, the United States District Court for the Eastern District of Pennsylvania transferred the case to this District pursuant to 28 U.S.C. § 1404(a). ECF No. 33.

[2] Also pending before the Court are BFS Defendants' motions to strike Plaintiffs' liability expert (ECF No. 123) and for summary judgment (ECF No. 124), which are not fully briefed and have been held in abeyance pending resolution of the instant motion for sanctions. ECF No. 132.

fully briefed.[3]  ECF Nos. 150–151.  A motion hearing was held on January 20, 2026 (ECF No. 159), and the parties filed supplemental briefing on the issue of attorney's fees (ECF Nos. 160–161, 163).  For the reasons set forth below, the motion is granted in part and denied in part.

## I.    BACKGROUND

### A.    Factual Allegations and Claims[4]

Plaintiffs' claims arise from a motor vehicle accident that occurred in Cecil County, Maryland, on October 2, 2020.  ECF No. 52 ¶¶ 74–76.  Plaintiffs allege that BFS Defendants hired Conaway Defendants to transport building materials.  *Id.* at ¶ 38.  BFS Defendants are entities involved in the trucking business.  *Id.* at ¶¶ 7–10.  Conaway is a "federally certificated

---

[3]  On January 19, 2026—a date on which the courthouse was closed in observance of the Martin Luther King, Jr. holiday—BFS Defendants filed what they styled as a "supplemental response in preparation for January 20, 2026 motion hearing" (bold and all caps removed).  ECF No. 158.  The undersigned has not considered this filing, which is an unauthorized surreply.  Local Rule 105.2(a) (D. Md. Dec. 1, 2025) ("Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed.").  Given that Plaintiffs' reply memorandum was filed on December 26, 2025, BFS Defendants had ample time to seek leave to file additional materials with the Court.  ECF No. 151.  The undersigned declines to indulge BFS Defendants' unapproved attempt to put forward new information and argument less than 24 hours before the scheduled motion hearing on a date when the courthouse was closed.  The undersigned further notes that BFS Defendants filed a similar eleventh-hour "supplemental response" (ECF No. 135) at 5:51 pm on the evening before the September 24, 2025 status conference (ECF No. 136).

This practice of filing supplemental documents mere hours before a court proceeding is unfair and prejudicial because it deprives opposing parties and their counsel of a meaningful opportunity to object and/or respond.  Such a practice also works a disservice both to the Court and to the opposing parties and their counsel—and ultimately BFS Defendants—because it creates unnecessary time pressures and significantly reduces the opportunity for meaningful review.  Moreover, this Court's Local Rules expressly prohibit last-minute filings.  Local Rule 105.2(b) (D. Md. Dec. 1, 2025) ("In no event, unless otherwise ordered by the Court, is any memorandum to be filed after 4:00 p.m. on the afternoon before the last business day preceding the day on which the proceeding to which the memorandum relates is to be held.  For example, a memorandum relating to a proceeding to be held on a Monday must be filed by 4:00 p.m. the previous Thursday.").  BFS Defendants and their counsel are forewarned that any similarly tardy and unsolicited filings will not be received favorably.

[4]  The factual allegations are drawn from the Amended Complaint.  ECF No. 52.  The undersigned takes no position on the veracity of the factual allegations, which are contested, and offers this summary solely for the purpose of contextualizing the pending dispute.

for-hire motor carrier." *Id.* at ¶ 11.  Conaway assigned Mr. Pacheco to transport the building materials using a tractor cab and flatbed trailer.  *Id.* at ¶ 40.  On the date of the occurrence, while driving eastbound on Peninsula Drive, Mr. Pacheco allegedly disregarded a stop sign, failed to yield, entered the southbound traffic on North East Road, and collided with the vehicle Jacob Yoder was operating.  *Id.* at ¶¶ 74–76.  Plaintiffs aver that as a result of the collision, Mr. Yoder "suffered severe and permanent injuries to his brain, skull, musculoskeletal system, vascular system, and nervous system; he also sustained severe and permanent injuries to the bones, muscles, tendons, ligaments, nerves and tissues to his body," as well as "severe aches, pains, mental anxiety and anguish and severe shock to his entire nervous system."  *Id.* at ¶¶ 77–78.  Plaintiffs contend that Mr. Pacheco was unfit to operate a tractor trailer and that Conaway and BFS Defendants were negligent in hiring him.  *Id.* at ¶¶ 84–97.

The Amended Complaint pleads five counts.  ECF No. 52.  Under Maryland law, Plaintiffs assert a negligence claim against all Defendants (Count I) (*id.* at ¶¶ 100–103); a negligent hiring and retention claim against BFS Defendants (Count II) (*id.* at ¶¶ 104–110); a negligent hiring, retention, and supervision claim against Conaway and BFS Defendants (Count III) (*id.* at ¶¶ 111–117); negligent entrustment claims against Conaway and BFS Defendants (Counts IV and V) (*id.* at ¶¶ 118–124 and ¶¶ 125–131); and civil aiding and abetting against BFS Defendants (Count VI) (*id.* at ¶¶ 132–137).  Plaintiffs also seek pecuniary damages (Count VII). *Id.* at ¶¶ 171–172.

As relevant here, in Count II, Plaintiffs allege that BFS Defendants had a duty to ensure that Conaway "was registered in good standing as an interstate motor carrier for hire with the U.S. Department of Transportation and . . . had the minimum insurance required by the Federal Motor Carrier Safety regulations for the benefit of the motoring public, including the required insurance" for the tractor trailer Mr. Pacheco operated on the date of the occurrence.  *Id.* at ¶ 106.

Plaintiffs assert that Mr. Pacheco and the tractor trailer he operated on the date of the occurrence were uninsured. *Id.* at ¶ 48. Plaintiffs also contend that BFS Defendants did not undertake appropriate due diligence to ensure that Conaway and Mr. Pacheco would safely transport the building materials before October 2, 2020, and that BFS Defendants "knew or should have known" that Conaway was "an incompetent and unsafe motor carrier/trucking company." *Id.* at ¶ 60; *see also id.* at ¶¶ 55–61, 64–68. Plaintiffs further contend that "at no time prior to October 2, 2020, did [ ] BFS Defendants request proof of [ ] Conaway's insurance coverage" for Mr. Pacheco or the vehicle he operated (*id.* at ¶ 69) and that BFS Defendants "knew or should have known" that the Conaway Defendants lacked the required minimum insurance (*id.* at ¶ 108).

### B.    Relevant Procedural History

On July 10, 2025, BFS Defendants moved for summary judgment. ECF No. 124. In their statement of undisputed material facts, BFS Defendants assert that they had "received Conaway's Certificate of Insurance establishing coverage over the applicable timeframes when entering into the Carrier Agreement in 2016 and at the time of the incident on October 2, 2020." ECF No. 124-3 ¶ 26 (Ex. 2; Ex. 10). In their memorandum of law in support of summary judgment, BFS Defendants argue, among other things, that they had confirmed that Conaway was properly insured. ECF No. 124-4 at 3.[5] BFS Defendants further assert that they are entitled to judgment as a matter of law on Plaintiffs' negligent hiring and retention claim (Count II) because, among other reasons, Conaway had insurance coverage at the time of the occurrence.[6] *Id.* at 10; *see also* ECF No. 124-7 at 14.

---

[5] Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files (CM/ECF) system printed at the top of the cited document, except that page numbers of filings that are transcripts refer to the page and line number of the transcript.

[6] The BFS Defendants further argue that even if there was not insurance coverage, "any alleged lack of insurance coverage is not causally related to [Mr.] Pacheco's negligence and cannot establish the proximate causation element." ECF No. 124-4 at 10.

On July 23, 2025, Plaintiffs filed a notice of intent to file a motion for sanctions based on allegations that BFS Defendants "fabricat[ed] and proffer[ed] a fraudulent certificate of liability insurance in discovery and in support of their Motion for Summary Judgment." ECF No. 125 at 1. BFS Defendants countered that Plaintiffs' motion was "frivolous," and that they "did not falsify" the challenged certificate of insurance. ECF No. 129 at 1. On July 30, 2025, Judge Griggsby held a status conference and granted Plaintiffs leave to file a motion for sanctions, referred said motion to a United States Magistrate Judge for resolution, and held in abeyance the motions for summary judgment (ECF No. 124) and to strike expert testimony (ECF No. 123) pending resolution of Plaintiffs' motion for sanctions (ECF No. 132).

Thereafter, the undersigned held a status conference and set deadlines for limited discovery related to the authenticity of the August 28, 2020 certificate of insurance. ECF Nos. 136–137. BFS Defendants subsequently sought leave to take additional discovery and to extend the deadlines to complete discovery related to the issues raised in Plaintiffs' contemplated motion for sanctions. ECF Nos. 138, 142. Ultimately, Plaintiffs moved for sanctions on December 5, 2025. ECF No. 149. Once the motion was fully briefed, the undersigned heard oral argument on January 20, 2026. ECF No. 159. Following the motion hearing, the undersigned permitted the parties to submit further briefing on the issue of attorney's fees (ECF No. 160), which they filed on January 28, 2026, and February 4, 2026. (ECF Nos. 161, 163).

## II.   DISCUSSION

The instant motion raises two discrete questions: (1) whether the certificate of insurance at issue is fraudulent; and, if so, (2) what sanction, if any, is appropriate. ECF No. 133 at 31:2–7. Each question is addressed in turn below.

### A.    Authenticity of the Certificate of Insurance

The undersigned need not belabor the first inquiry: the August 28, 2020 certificate of insurance was fraudulently altered and is therefore inauthentic.  In July 2025, Plaintiffs filed a declaration and affidavit executed by Scott Rovner, the President of Rovner Insurance Group (Rovner), who attested that Rovner did not issue the contested certificate of insurance and that it was fraudulent.  ECF No. 125-1 at 14–16.  Subsequent discovery on the issue of authenticity confirmed the same.  *E.g.*, ECF Nos. 149-2; 149-4.

To contextualize discussion of the inauthentic document and the role of a certificate of automobile liability insurance in the instant action, the undersigned notes the following.  BFS Defendants' corporate designee testified at his deposition that Builders FirstSource and Conaway entered into a motor carrier agreement on May 11, 2016.  ECF No. 149-6 at 5:14–20, 16:15–21, 24:21–25:1; *see also* ECF No. 150-19 at 3–7.  Pursuant to this agreement, Conaway was required to maintain automobile insurance.  ECF Nos. 149-6 at 25:5–16; 150-19 ¶ 10(b).  BFS Defendants' corporate designee further testified that if they had verified that Conaway did not have the required automobile insurance coverage, they would not have engaged Conaway to transport the October 2, 2020 load.  ECF No. 149-6 at 74:6–16.

J.S. Braddock Agency (Braddock) issued a certificate of insurance on February 13, 2020, which documented, among other things, that Conaway had an automobile liability policy effective through August 15, 2020.  ECF No. 150-22.  Patrick Montgomery was the contact person listed on this certificate of insurance.  *Id.*  At the time, Mr. Montgomery was an employee of Braddock.  ECF No. 149-7 at 7:7–13.  Braddock issued another certificate of insurance on August 27, 2020, which did not include an automobile liability policy.  ECF No. 156-11.  Mr. Montgomery was listed as the contact person for this certificate of insurance as well.  *Id.*

Plaintiffs retained an expert who prepared a report dated October 11, 2024, in which the expert noted that Conaway's automobile insurance was set to expire in August 2020 and opined that BFS Defendants "appeared to have not followed up to ensure that Conaway had active insurance" before the accident.  ECF No. 127-4 at 9.  The expert further opined that if they had done so, BFS Defendants "would have learned Conaway had, indeed, failed to maintain its insurance obligation."  *Id.*  The expert concluded, in relevant part, that BFS Defendants "Builders First Source failed to do its due diligence to ensure it entrusted its goods with an insured, reputable, and compliant motor carrier."[7]  *Id.* at 10–11.

Under the Second Amended Scheduling Order, discovery closed on December 20, 2024. ECF No. 98.  Plaintiffs assert that on December 17, 2024, BFS Defendants produced a previously undisclosed document that purports to be a certificate of insurance dated August 28, 2020.  ECF Nos. 149 at 6, 149-1 at 2.  This certificate of insurance indicated that it had been issued by Rovner and purported to document that Conaway had automobile insurance effective March 21, 2020, through March 21, 2021.[8]  ECF No. 149-1 at 2.  This document identifies Mr. Rovner as the contact person.  *Id*.

---

[7]  The undersigned offers no assessment of the veracity of the expert's conclusions, which are contested, or whether the expert is appropriately designated, which is the subject of BFS Defendants' pending motion to strike.  ECF No. 123.  Information about the expert's observations and opinions is included here not for the truth of the matter asserted, but rather to contextualize production of the August 28, 2020 certificate of insurance at issue in the instant motion for sanctions.  It should also be noted that BFS Defendants retained an expert, who contests the conclusions of Plaintiffs' expert.  ECF No. 150-8.

[8]  Conaway Racing & Trucking LLC's corporate designee, Patrick Conaway, testified at his December 17, 2024 deposition that he did not engage Rovner Insurance Group (Rovner). ECF No. 150-21 at 72:7–9.  Instead, J.S. Braddock Agency (Braddock) engaged Rovner for reasons for which Mr. Conaway was not aware.  *Id.* at 72:11–13.  Braddock's corporate designee, Timothy Latimer, testified that Rovner was engaged because Braddock had a "temporary suspension" with Progressive Insurance and therefore "had to seek coverage with another entity."  ECF No. 149-4 at 6:12–22; *see also id*. at 9:15–22, 12:6–9.

Mr. Rovner testified his November 7, 2025 deposition that his office sent a certificate of insurance to Mr. Montgomery, at his request.  ECF No. 149-2 at 6:2–5, 13:10–14:12; *see also* ECF Nos. 150-26; 150-28.  He further testified that the certificate of insurance his office sent to Mr. Montgomery "was definitely altered" after-the-fact.  ECF No. 149-2 at 16:16.  For example, there was a checkmark by "any auto" that was handwritten and inconsistent with the "scheduled auto" box that had been checked.  *Id.* at 17:4–9; *see also id.* at 23:10–24:3.  Further, another portion of the text appeared to have been cut and pasted into the document.  *Id.* at 17:9–14.  Mr. Rovner did not know who had altered the certificate, although he suspected that it had been Mr. Montgomery because Rovner had sent it to Mr. Montgomery directly and "within less than two hours it came out" altered.  *Id.* at 16:16, 17:24–18:2.  Mr. Rovner did not direct Mr. Montgomery to alter the document and was not aware that anyone else had done so.  *Id.* at 18:6–11.  Ultimately, Mr. Rovner testified that the certificate of insurance at issue was "fraudulent."  *Id.* at 22:18–21.

Timothy Latimer, Vice-President of Braddock, testified at a deposition also taken on November 7, 2025, that Mr. Montgomery had previously told him on September 3, 2025, that he had altered the certificate of insurance at issue, although Mr. Latimer did not know why.  ECF No. 149-4 at 6:1–4, 18:8–23.  Mr. Latimer further testified that no one at Braddock knew that Mr. Montgomery "had altered a certificate [of insurance] back in 2020 to provide to Conaway." *Id.* at 19:7–8.  Mr. Montgomery altered the certificate of insurance while he was working for Braddock, but he did so without permission and outside the scope of his employment.  *Id.* at 8:16–9:4.  Mr. Latimer did not direct Mr. Montgomery to alter the certificate and did not know whether anyone else did.  *Id.* at 20:2–5.  After learning of the alteration, Braddock suspended Mr. Montgomery pending an investigation.  *Id.* at 25:19–23, 26:8–9.  The investigation revealed that Mr. Montgomery had altered the certificate of insurance outside the scope of his

employment.  *Id.* at 26:13–19.  Mr. Montgomery resigned before Braddock could terminate his employment.  *Id.* at 26:20–21.  Ultimately, Mr. Latimer testified that the certificate of insurance was "fraudulent."  *Id.* at 28:3–5, 11–12.

Mr. Montgomery sat for a deposition on November 19, 2025, at which time he invoked his right against self-incrimination pursuant to the Fifth Amendment of the United States Constitution when asked about the August 28, 2020 certificate of insurance.  ECF No. 149-7 at 8:16–21, 9:9–13:25, 14:11–23; U.S. Const. amend. V.

Neither party has offered any evidence to suggest that the August 28, 2020 certificate of insurance is authentic.  The record as a whole establishes that it was, in fact, fraudulently altered. Indeed, counsel for BFS Defendants acknowledged during the January 20, 2026 motion hearing that she has known as much since at least November 7, 2025.  ECF No. 159.

**B.    Sanctions**

The remaining question is what sanction, if any, is appropriate.  Plaintiffs initially sought entry of a default judgment against BFS Defendants on Counts II and VI of the Amended Complaint.  ECF No. 149 at 20.  At the motion hearing, Plaintiffs proffered an array of alternative sanctions, including striking the fraudulent document from the record, making substantive findings regarding liability and other elements of certain claims, instructing the jury on adverse inferences, and awarding attorney's fees.  ECF No. 159.  BFS Defendants advanced an array of arguments focused on the merits of Plaintiffs' claims and other matters (*e.g.*, that Conaway had automobile liability insurance, that BFS Defendants did not solely rely upon the certificate of insurance in conducting its due diligence, that Plaintiffs should have raised the authenticity issue sooner).  *Id.*  Plaintiffs seek sanctions pursuant to the Court's inherent and statutory authority, as well as Federal Rule of Civil Procedure 37(c)(1)(C).  ECF No. 149 at 12. On January 21, 2026, following the motion hearing, the undersigned directed the parties to file

supplemental briefing addressing whether a sanction was warranted pursuant to Federal Rule of

Civil Procedure 11 and providing support (and opposition) to an award of attorney's fees. ECF

Nos. 160–161, 163. The legal framework governing each vehicle for the imposition of sanctions

is addressed in turn below.

1. <u>Legal Framework</u>

The United States Supreme Court has long recognized that courts of justice possess

certain implied or inherent powers, which are "governed not by rule or statute but by the control

necessarily vested in courts to manage their own affairs so as to achieve the orderly and

expeditious disposition of cases." *Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting

*Link* v. *Wabash R. Co.,* 370 U.S. 626, 630-631 (1962)) (internal quotation marks omitted).

"Because the inherent power is not regulated by Congress or the people and is particularly

subject to abuse, it must be exercised with the greatest restraint and caution, and then only to the

extent necessary." *United States* v. *Shaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir. 1993).

"Sanctions pursuant to a court's inherent authority are appropriate where filings 'involve fraud,

deceit, misrepresentation, harassment and unethical conduct.'" *Dickens* v. *Conner*, Civil Action

No. SAG-23-177, 2024 WL 4135388, at *3 (D. Md. Sept. 10, 2024) (quoting *Harvey* v. *Cable

News Network, Inc.*, 48 F.4th 257, 281 (4th Cir. 2022)). "Inherent then, in . . . the court's

authority to impose sanctions . . . is an element of bad faith." *Harvey*, 48 F.4th at 276.

Beyond this inherent power, Congress has further conferred upon the courts authority to

order any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously

. . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred

because of such conduct." 28 U.S.C. § 1927. "The statute 'imposes a continuing obligation in

the conduct of litigation.'" *Sweetland* v. *Bank of Am. Corp.*, 241 Fed. Appx. 92, 95 (4th Cir.

2007) (quoting *Brubaker* v. *City of Richmond,* 943 F.2d 1363, 1382 n.25 (4th Cir.1991)).

"Section 1927 addresses a narrower field of conduct than that which may be addressed under the court's inherent authority because § 1927 permits sanctions only for bad-faith conduct that wrongfully multiplies proceedings."  *Six* v. *Generations Fed. Credit Union*, 891 F.3d 508, 520 (4th Cir. 2018).  Because "Section 1927 focuses on the conduct of the litigation and not on its merits," *DeBauche* v. *Trani,* 191 F.3d 499, 511 (4th Cir. 1999), it "applies only to attorneys, not parties," *Baker* v. *Booz Allen Hamilton, Inc.*, Civil Action No. RWT-06-889, 2008 WL 11425679, at *2 (D. Md. Oct. 31, 2008), *aff'd*, 358 Fed. Appx. 476 (4th Cir. 2009).

"Merely negligent conduct will not support an imposition of sanctions under 28 U.S.C. § 1927." *In re Gould*, 77 Fed. Appx. 155, 161 (4th Cir. 2003).  Instead, similar to the imposition of sanctions based on inherent authority, Section 1927 "requires 'a finding of counsel's bad faith.'" *Id.* (quoting *Chaudhry* v. *Gallerizzo,* 174 F.3d 394, 411 n.14 (4th Cir.1999)).  Thus, "[t]o impose sanctions under § 1927, the court must find that the attorney acted to multiply the proceedings unreasonably and vexatiously, the attorney acted in bad faith, and that there is a 'causal link between wrongful conduct and an unreasonable and vexatious multiplication of proceedings.'" *Boshea* v. *Compass Mktg., Inc.*, Civil Action No. ELH-21-309, 2025 WL 3033933, at *14 (D. Md. Oct. 30, 2025) (quoting *Six*, 891 F.3d at 520).

"Courts generally recognize two distinct standards for determining bad faith: a 'more stringent subjective standard' and a less stringent objective standard." *Collins* v. *Dollar Tree Stores, Inc.*, No. 2:09CV486, 2010 WL 9499078, at *3 (E.D. Va. May 28, 2010) (quoting *Salvin* v. *American Nat'l Ins. Co.,* 281 Fed. Appx. 222, 225 (4th Cir. 2008)).  Although the United States Court of Appeals for the Fourth Circuit "has not addressed the issue, other circuits have held that bad faith under § 1927 turns not on the attorney's subjective intent, but on the attorney's objective conduct." *Bradley* v. *Analytical Grammar, Inc.*, No. 19-CV-249, 2022 WL 2678887, at *3 (E.D.N.C. July 11, 2022) (collecting cases from the United States Courts of

Appeal for the First, Sixth, Seventh, Tenth, and Eleventh Circuits). "[O]bjective bad faith does not require a finding of malice or ill will; reckless indifference to the law will qualify." *Collins,* 2010 WL 9499078, at *3 (quoting *Dal Pozzo* v. *Basic Mach. Co.*, 463 F.3d 609, 614 (7th Cir. 2006)) (internal quotation marks omitted); *accord Coghlan* v. *Starkey*, 852 F.2d 806, 814 (5th Cir. 1988); *Reliance Ins. Co.* v. *Sweeney Corp., Md.*, 792 F.2d 1137, 1138 (D.C. Cir. 1986). Under "the objective standard, bad faith encompasses 'extremely negligent' or 'recklessly indifferent' conduct." *Zaklady Farmaceutyczne Polpharma S.A.* v. *Kartha Pharms., Inc.*, No. 3:21-CV-133-MOC-DCK, 2024 WL 203238, at *1 (W.D.N.C. Jan. 18, 2024). Thus, if counsel "pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *Collins,* 2010 WL 9499078, at *3 (quoting *Dal Pozzo*, 463 F.3d at 614); *see also United States* v. *Allergan, Inc.*, Civil Action No. SAG-17-668, 2024 WL 2882125, at *6 (D. Md. May 30, 2024) (same).

Federal Rule of Civil Procedure 11 provides, in pertinent part, that "[b]y presenting to the court a pleading, written motion, or other paper–whether by signing, filing, submitting, or later advocating it–an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that "it is not being presented for any improper purpose, such as to . . . needlessly increase the cost of litigation," and that "the factual contentions have evidentiary support."[9]  Fed. R. Civ. P. 11(b)(1), (3).  This rule authorizes the court to impose an appropriate sanction following compliance with identified procedural protections.  Fed. R. Civ. P. 11(c)(1)-(3).  "In order to determine 'improper motive' under Rule 11, a court must judge the attorney's conduct under an objective standard of

---

[9]  The provisions of Federal Rule of Civil Procedure 11 "have always applied to motions and other papers by virtue of incorporation by reference in Rule 7(b)(2)." Fed. R. Civ. P. 11, advisory committee's note to 1983 amendment.

reasonableness rather than assessing subjective intent." *Fahrenz* v. *Meadow Farm P'ship*, 850 F.2d 207, 210 (4th Cir. 1988); *see also In re Kunstler*, 914 F.2d 505, 518 (4th Cir. 1990).

Importantly, "[a]s the Advisory Committee on Rules made clear, 'the court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.'" *Miltier* v. *Downes*, 935 F.2d 660, 663 (4th Cir. 1991) (quoting Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment); *see also Brubaker,* 943 F.2d at 1382 (adopting the "snapshot" view of Rule 11). As the Fourth Circuit has explained, "the 'snapshot' view does not obviate the need to reevaluate one's case. Many papers are signed and filed during the course of the proceedings, and counsel must ensure that each paper filed has merit in order to avoid sanctions." *Brubaker*, 943 F.2d at 1382, n.24. Thus, "Rule 11 'emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable and by generally providing protection against sanctions if they *withdraw or correct contentions after a potential violation is called to their attention.*'" *Sterling* v. *Ourisman Chevrolet of Bowie Inc.*, Civil Action No. PWG-12-3193, 2016 WL 11643614, at *2 (D. Md. Feb. 12, 2016) (quoting Fed. R. Civ. P. 11 advisory committee note to 1993 amendment) (emphasis in original).

"A court may sanction an attorney who has violated Rule 11(b) . . . on its own initiative." *Neal* v. *Frayer*, Civil Action No. BAH-24-778, 2025 WL 3204710, at *14 (D. Md. Nov. 17, 2025) (quoting *Kruglyak* v. *Home Depot U.S.A., Inc.*, 774 F. Supp. 3d 767, 769 (W.D. Va. 2025)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 11(c)(3). Prior to imposing a sanction, a court must issue a show-cause order or otherwise put the relevant party on notice. Fed. R. Civ. P. 11(c)(1)(B); *Lewin* v. *Cooke*, 28 Fed. Appx. 186, 195-196 (4th Cir. 2002) (finding that the district court's oral instructions during a hearing, which put the parties on notice, identified the potentially sanctionable conduct, and requested briefing on the issue,

satisfied the show-cause requirement).  The Fourth Circuit has cautioned that "a court is obliged to use extra care in imposing sanctions on offending lawyers" when raising the issue of a potential Rule 11 violation *sua sponte*.  *Hunter* v. *Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002).  In such circumstances, a court "must particularize the behavior it deems sanctionable, and it may only impose the sanction necessary to deter future misconduct."  *Id.* at 157.

The court's inherent authority, Section 1927, and Rule 11 all authorize the imposition of monetary sanctions, although the purpose of such an award varies under each vehicle.  A court may award attorney's fees pursuant to its inherent authority "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Chambers*, 501 U.S. at 45-46.  "An award of costs, expenses, and attorney's fees pursuant to § 1927 is compensatory in nature—not punitive." *Six*, 891 F.3d at 520.  "Under Rule 11, the primary purpose of sanctions against counsel is not to compensate the prevailing party, but to 'deter future litigation abuse.'"  *Hunter*, 281 F.3d at 151 (quoting *In re Kunstler*, 914 F.2d at 522).  "Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty."  Fed. R. Civ. P. 11 advisory committee note to 1993 amendment.

Prior to imposing a monetary sanction under Section 1927 or Rule 11, a court must consider counsel's ability to pay.  *E.g.*, *Caseres* v. *S & R Mgmt. Co., LLC*, Civil Action No. AW 12-1358, 2013 WL 5781582, at *2 (D. Md. Oct. 24, 2013) (citing *Salvin*, 281 Fed. Appx. at 226). The party being sanctioned has the burden "to come forward with evidence of an inability to pay."  *Fidelity & Guar. Life Ins. Co.* v. *Harrod*, Civil Action No. CCB-05-2732, 2008 WL 2246518, at *5 (D. Md. Apr. 15, 2008), *aff'd sub nom.*, 334 Fed. Appx. 572 (4th Cir. 2009); *see also In re Kunstler*, 914 F.2d at 524.  The Fourth Circuit has "noted that the '[i]nability to pay

. . . should be treated as reasonably akin to an affirmative defense, with the burden upon the parties being sanctioned to come forward with evidence of their financial status." *Salvin*, 281 Fed. Appx. at 226 (quoting *In re Kunstler*, 914 F.2d at 524) (alteration in original).[10]

Finally, there is the issue of the applicable evidentiary standard. The Fourth Circuit has not addressed this issue directly. *Six*, 891 F.3d at 518 n.9 (declining "to decide whether a clear-and-convincing evidence standard might apply to a finding of bad faith before awarding sanctions in the form of compensatory attorney's fees"). Nevertheless, several decisions of this Court have applied the heightened clear and convincing evidentiary standard when evaluating motions for sanctions based on inherent authority, Section 1927, and Rule 11. *E.g.*, *Johnson* v. *Baltimore Police Dep't*, Civil Action No. ELH-19-0698, 2022 WL 9976525, at *36 (D. Md. Oct. 14, 2022); *Glynn* v. *EDO Corp.*, Civil Action No. JFM-07-1660, 2010 WL 3294347, at *2 (D. Md. Aug. 20, 2010). As a sister court from this Circuit has explained:

> Because the court's inherent power to sanction should be exercised with caution and discretion, some circuits have held that clear and convincing evidence of bad faith and vexatious behavior is required for a court to exercise its inherent authority to sanction. Although the Fourth Circuit appears not to have addressed the issue, this Court believes it, too, would adopt the clear and convincing evidence standard with regard to the Court's inherent power to sanction.

---

[10] Plaintiffs also move for sanctions pursuant to Federal Rule of Civil Procedure 37(c)(1)(C), which provides that a court may impose "appropriate sanctions" if "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." ECF No. 149 at 1, 12; Fed. R. Civ. P. 37(c)(1)(C). Subsection (c) of Rule 37, which is entitled "Failure to Disclose, to Supplement an Earlier Response, or to Admit," addresses the available sanctions for failure to comply with Rule 26(a) and (e), which, in turn, address required initial, expert, and pretrial disclosures, and supplementation of the same. Plaintiffs have not clearly articulated how this rule offers an avenue for the relief they seek. Moreover, the "basic purpose" of sanctions under Rule 37(c)(1) is to "prevent[ ] surprise and prejudice to the opposing party" by nondisclosure "without substantial justification." *Southern States Rack and Fixture, Inc.* v. *Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003). Nondisclosure of relevant evidence is not at issue here. The undersigned therefore declines to consider imposition of sanctions pursuant to Rule 37.

*Balcar* v. *Bell & Assocs., LLC*, 295 F. Supp. 2d 635, 640 (N.D.W. Va.) (internal citations omitted), *aff'd*, 83 Fed. Appx. 519 (4th Cir. 2003). The undersigned concurs and therefore applies the clear and convincing standard. "Clear and convincing evidence is that which supports 'a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established.'" *United States* v. *Welsh*, 564 Fed. Appx. 727, 728 (4th Cir. 2014) (quoting *United States* v. *Antone*, 742 F.3d 151, 159 (4th Cir. 2014)).

2.    <u>Prior Filings and Proceedings</u>

Evaluation of the appropriate sanction, if any, requires a more granular discussion of BFS Defendants' actions and filings leading up to resolution of the instant motion, as well as analysis of how the limited discovery on the issue of authenticity does (and does not) support Plaintiffs' allegations. In support of their summary judgment motion, BFS Defendants relied on the fraudulent certificate of insurance to establish that Conaway had insurance during the relevant timeframe. ECF Nos. 124; 124-3 ¶ 26 (Ex. 2; Ex. 10); 124-4 at 3, 10. Plaintiffs then filed a notice of intent to move for sanctions based on allegations that BFS Defendants had "intentionally defrauded the Plaintiffs and the Court by creating, producing, and relying on the fraudulent [certificate of insurance]" in support of their summary judgment motion. ECF No. 125-1 at 6. To support their allegations, Plaintiffs relied on the sequence of events regarding production of their expert report and BFS Defendants' disclosure of the fraudulent certificate of insurance. ECF No. 125-1 at 5 ("Only one plausible explanation exists: BFS [Defendants] created the fraudulent [certificate of insurance] after receiving the Plaintiffs' expert report."). Plaintiffs filed as proposed exhibits Mr. Rovner's March 4, 2025 declaration and affidavit in which he attested that the certificate of insurance appeared to be (or was) a fraudulent document and identified irregularities on the face of the document. ECF No. 125-1 at 14–15.

BFS Defendants argued in their response to Plaintiffs' notice, among other things, that they "did not falsify" the certificate of insurance at issue, that the proposed motion for sanctions was "frivolous," and that counsel for Plaintiffs had acted "deceptively" by not disclosing Mr. Rovner's declaration and/or affidavit previously.  ECF No. 129 at 1, 5.  During the July 30, 2025 status conference before Judge Griggsby, counsel for BFS Defendants discussed various exhibits to its response and argued that it was "not possible for BFS [Defendants] to have created this document, but rather that it was [ ] a document provided by Patrick Montgomery to Mr. Conaway and then provided to BFS back in August of 2020."  ECF No. 133 at 14:25–15:3. Counsel for BFS Defendants further argued that the certificate of insurance was, "in fact, legitimate and in place at the time."  *Id.* at 18:8–9; *see also id.* at 19:1–4 ("Your Honor, there's no question that this [certificate of insurance] is not only legitimate but has been substantiated through the actual correspondence that was sent to my client, which shows that it wasn't possible to be fabricated.").

Following Judge Griggsby's referral of this matter to a United States Magistrate Judge, the undersigned held a conference on September 24, 2025, at which time BFS Defendants argued that the undersigned should either deny the motion for sanctions because the certificate of insurance at issue was irrelevant to resolution of Plaintiffs' claims or allow discovery on the issue of the document's authenticity.  ECF No. 135 at 5.  Given that there was, as Judge Griggsby described it, "clearly a material dispute" regarding the authenticity of the certificate of insurance (ECF No. 133 at 31:11–12), the undersigned permitted "discovery limited both in scope and in time" to facilitate resolution of the question of authenticity (ECF No. 137 at 1).  The deadline for completion of this limited discovery was November 7, 2025.  ECF No. 137 at 2.

On October 2, 2025, BFS Defendants sought, and were granted the following day, leave to depose Mr. Montgomery, whose employment with Braddock had concluded.  ECF Nos. 138,

141.  On November 7, 2025, BFS Defendants moved for an extension of time to complete the limited discovery because, on the advice of counsel, Mr. Montgomery did not appear for his scheduled deposition that day.  ECF No. 142 ¶¶ 15–19.  Plaintiffs opposed the request, arguing that the corporate designee depositions of Braddock and Rovner had already established that the certificate of insurance was "a fraud."  ECF No. 144 ¶¶ 1, 6–8.  BFS Defendants argued in reply that Mr. Montgomery's deposition was necessary "to resolve the dispute regarding . . . authenticity with certainty" because the previous deponents "were not involved in the creation of the [certificate of insurance] at issue."  ECF No. 147 ¶¶ 2, 4.  Following briefing of this issue, on November 14, 2025, the undersigned granted BFS Defendants one week to take Mr. Mongomery's deposition and set a briefing schedule for the proposed motion for sanctions.  ECF No. 148.  As noted, Mr. Montgomery invoked his Fifth Amendment right against self-incrimination at the deposition and, thus, did not offer any substantive response regarding alteration of the certificate of insurance.  ECF No. 149-7; *see also*, I.B., *supra*.

    With the benefit of the additional limited discovery, Plaintiffs no longer contend that BFS Defendants fabricated the inauthentic document.  ECF No. 149.  Nor could they.  The motive and precise sequence of events surrounding falsification of the certificate remain uncertain, but no evidence has been adduced to support Plaintiffs' initial allegation that BFS Defendants and their counsel fraudulently created the inauthentic document.  Instead, Plaintiffs now argue that sanctions are warranted because "BFS [Defendants] and its counsel produced [in discovery], filed, relied upon, and continued to rely upon a fraudulent and objectively illegitimate August 2020 Certificate of Insurance."  ECF No. 149 at 1.  Plaintiffs further assert that by continuing to rely upon the fraudulent document, "BFS [Defendants] and its counsel have elevated loyalty to their client above their paramount duty of candor to the Court."  *Id.* at 12.

BFS Defendants argue that they "were not involved in the . . . creation or alteration" of the inauthentic certificate and instead they fell "victim to Mr. Montgomery's fraudulent representations." ECF No. 150 at 2. Inexplicably, in this same filing, BFS Defendants shy away from categorically identifying the certificate of insurance as fraudulent, while simultaneously attempting to leverage it to their advantage. BFS Defendants argue, for example, that "the [certificate of insurance]—*even if, for purposes of this motion, it is accepted that Mr. Montgomery altered it improperly after it was issued*—is nevertheless relevant, probative evidence" because Conaway "provided [it] . . . to BFS Defendants for purposes of demonstrating Conaway's insurance coverage." *Id.* at 18 (emphasis added); *see also id.* ("BFS Defendants were themselves deceived with regard to the alterations, although the [certificate of insurance] continues to evidence the existence of an actual underlying policy of insurance."). Moreover, BFS Defendants persist in their inability (or unwillingness) to appreciate that the authenticity of the certificate of insurance is distinct from the existence (or non-existence) of insurance coverage during the relevant timeframe. *Compare* ECF No. 133 at 21:10–21, 22:2–10, 23:2–24:17 *with* ECF No. 150 at 18.

### 3.    Applicable Sanctions

BFS Defendants ultimately conceded at the January 20, 2026 motion hearing that the certificate of insurance is fraudulent and should be stricken from the record. ECF No. 159. The undersigned concurs. At minimum, the altered, inauthentic document cannot be considered by this Court when evaluating the merits of the parties' claims and defenses. As the Fourth Circuit has explained, "[o]ur adversary system for the resolution of disputes rests on the unshakable foundation that truth is the object of the system's process which is designed for the purpose of dispensing justice." *Shaffer Equip. Co.*, 11 F.3d at 457. "[B]ecause no one has an exclusive insight into truth, the process depends on the adversarial presentation of evidence . . . and

argument to reasoned conclusions—all directed with unwavering effort to what . . . is believed to be true on matters material to the disposition." *Id.* Therefore, "[e]ven the slightest accommodation of deceit or a lack of candor in any material respect quickly erodes the validity of the process." *Id.* "As soon as the process falters in that respect, the people are then justified in abandoning support for the system." *Id.*; *see also Dickens*, 2024 WL 4135388, at *9 ("The public interest in the integrity of the judicial process is paramount. The public must be able to rely on fair judicial proceedings.").

BFS Defendants and their counsel have undermined the truth-seeking function of the Court through their continued reliance on a document that is indisputably fraudulent in support of their summary judgment motion. Although the fraudulent certificate of insurance appears to have been prepared by another individual (Mr. Montgomery) and not the BFS Defendants themselves as Plaintiffs initially alleged, BFS Defendants nonetheless have sought to reap benefits from the fraudulent document in this action. Importantly, BFS Defendants refused to disavow the fraudulent document for months, and they have yet to file anything with the Court to reflect their position that the document should be stricken from the summary judgment record—a position articulated for the first time at the January 21, 2026 motion hearing despite counsel's admission that she had known it was fraudulent for at least 75 days. ECF No. 159. The question is whether any further sanction beyond striking the fraudulent document is warranted. In light of the applicable clear and convincing evidentiary standard and the cautions that permeate precedential case law regarding the imposition of sanctions, the undersigned concludes that they are not.

The undersigned begins with sanctions pursuant to 28 U.S.C. § 1927 because sanctions pursuant to the Court's inherent authority, which are "not regulated by Congress or the people," are even more closely guarded. *Shaffer Equip. Co.*, 11 F.3d at 461 (instructing that the Court's

inherent power "must be exercised with the greatest restraint and caution"). As the statutory language makes clear, Section 1927 requires the unreasonable and vexatious multiplication of proceedings as a prerequisite to imposition of any sanction. 28 U.S.C. § 1927. It cannot be said by clear and convincing evidence that BFS Defendants have done so here.

BFS Defendants assert that once Plaintiffs raised the issue of the certificate of insurance's authenticity, they "were unable to simply accept Plaintiffs' representations regarding that investigation without conducting their own due diligence." ECF No. 150 at 9. BFS Defendants contend that they "acted only to engage in a reasonable investigation of the [certificate of insurance] at issue," *id.* at 14, which they correctly note "was approved by this Court on multiple occasions," *id.*; *see also* ECF Nos. 137; 141; 146. The undersigned approved BFS Defendants' request to conduct limited discovery on the issue of authenticity in light of the contested issues of fact and the severity of the allegations Plaintiffs had levied against BFS Defendants and their counsel. ECF No. 141. BFS Defendants conducted the limited discovery diligently and acted expeditiously to clarify the circumstances surrounding production of the fraudulent document. Although Plaintiffs opposed an extension of the limited discovery to depose Mr. Montgomery, the undersigned does not find it unreasonable that BFS Defendants wanted to question the individual who apparently falsified the document to gain greater clarity surrounding the motive and circumstances surrounding its production. Ultimately, Mr. Montgomery's deposition did not add anything of substance, but that does not undercut the validity of the additional discovery or render the conduct of the same unreasonable or vexatious.[11]

---

[11] The undersigned notes, however, that upon completion of the limited discovery, BFS Defendants and their counsel did not act with the same diligence in connection with the briefing of the instant motion. BFS Defendants' reluctance to acknowledge the fraudulent nature of the August 28, 2020 certificate of insurance has in some respects resulted in the unnecessary expenditure of resources by the parties and the Court. Had BFS Defendants simply

As noted, *see* II.B.1., *supra*, Section 1927 sanctions require a showing of bad faith. While the objective bad faith standard is less stringent, it nevertheless requires recklessly indifferent or extremely negligent conduct. *Zaklady Farmaceutyczne Polpharma S.A.*, 2024 WL 203238, at *1. Here, that standard is not satisfied given that there is no evidence that BFS Defendants knew the document was fraudulent when they moved for summary judgment. Further, once apprised of Plaintiffs' allegations, BFS Defendants undertook reasonable, timely, and court-approved steps to investigate the question of the certificate of insurance's authenticity. BFS Defendants' only filings since completion of the limited discovery on the issue of authenticity have been in connection with Plaintiffs' motion for sanctions. ECF Nos. 150, 163.

In contrast, cases in which the Fourth Circuit has affirmed an award of sanctions pursuant to Section 1927 involve affirmative steps to advance baseless claims or otherwise delay litigation. *E.g.*, *Six*, 891 F.3d at 522 (counsel "evince[ed] a multi-year crusade to suppress the truth to gain a tactical litigation advantage"); *Salvin*, 281 Fed. Appx. at 226 (counsel "protracted the litigation" by refusing to voluntarily dismiss the case once its lack of merit became evident); *Sweetland*, 241 Fed. Appx. at 97 (counsel pursued claims knowing that they lacked evidentiary support, took affirmative steps to stall discovery, and filed a motion for summary judgment

---

acknowledged in their memorandum of law in opposition to the imposition of sanctions that the certificate of insurance was inauthentic—a fact they admit they had known for more than one month at the time of their filing—resolution of this motion would have been substantially truncated. Instead, BFS Defendants have continued to muddy the waters by advancing collateral issues, such as whether Conaway was in fact insured regardless of the authenticity of the certificate of insurance, and attempting to leverage the fraudulent document in support of their position on the merits of Plaintiffs' claims. The undersigned's frustration with BFS Defendants in this regard is not, however, a sufficient basis upon which to award sanctions pursuant to Section 1927. *E.g.*, *DeBauche* v. *Trani*, 191 F.3d 499, 511-512 (4th Cir. 1999) (concluding, as a matter of law, that filing one document cannot be held to have multiplied the proceedings unreasonably and vexatiously); *In re Cohen* v. *Fox*, Nos. 94-2652, 95-1008, 1997 WL 577583, at *4, 122 F.3d 1060 (Table) (4th Cir. Sept. 17, 1997) (holding, as a matter of law, that counsel's conduct was not sanctionable under Section 1927 because, even though it was "ill-considered" and caused "additional and unnecessary costs," counsel did not "act with the purpose of increasing costs for the defendants").

based on unsupported claims); *Fahrenz*, 850 F.2d at 210 (counsel moved for summary judgment after key witnesses repudiated the plaintiff's claims).

Given that Section 1927 sanctions are not warranted, the same holds true for inherent authority sanctions. *Sanford* v. *Commonwealth of Va.*, 689 F. Supp. 2d 802, 813 (E.D. Va. 2010), *abrogated on other grounds by, McKenzie* v. *Norfolk S. Ry. Co.,* 497 Fed. Appx. 305 (4th Cir. 2012) (noting that the Court's inherent power to impose sanctions is narrower than its authority to impose sanctions pursuant to Section 1927 because "the misconduct required is almost always something more egregious than that required for other types of sanctions"). This is especially so here because there has been no showing of "fraud, deceit, misrepresentation, harassment and unethical conduct," *Harvey*, 48 F.4th at 281, let alone clear and convincing evidence of the same, *e.g.*, *Johnson*, 2022 WL 9976525, at *36.

The undersigned likewise concludes that Rule 11 sanctions are not appropriate. Plaintiffs challenge BFS Defendants' reliance on the fraudulent certificate of insurance in connection with their summary judgment motion. ECF No. 149 at 1. Yet, there is no evidence that BFS Defendants knew the certificate was fraudulent at the time they filed their motion. *Cf. Dickens*, 2024 WL 4135388, at *8 ("Submitting falsified documents, making untrue statements in a declaration, and then making further false statements as a cover up, is a textbook violation of Rule 11(b)."). As noted, *see* II.B.*, supra*, the Court may not use the "wisdom of hindsight" and must instead evaluate the filings at the time of submission. *Brubaker*, 943 F.2d at 1382; *Miltier*, 935 F.2d at 663; Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment. To the extent that Plaintiffs argue that BFS Defendants have not corrected the record, it must be noted that Rule 11 does not impose a duty to correct, amend, or supplement. *Brubaker*, 943 F.2d at 1382; *Mann* v. *Gomez*, No. 3:20-CV-820, 2022 WL 2077952, at *8 (E.D. Va. June 9, 2022).

To be sure, Rule 11 prohibits advocating for a position for which there is no evidentiary support.  Fed. R. Civ. P. 11(b)-(c); *In re Hudson*, 24 Fed. Appx. 153, 154-155 (4th Cir. 2001) (affirming Rule 11 sanctions where in opposition to summary judgment plaintiffs' counsel relied upon wage calculations that were shown to be inaccurate and fraudulent in discovery).  BFS Defendants have not yet done so, even if they came close to the line with their attempt to argue that the fraudulent document is nonetheless probative of and relevant to disputed issues in the case.  ECF No. 150 at 18.  Even so, as this Court has noted, "there is a distinct difference between an intentional attempt to deceive and an attempt at zealous advocacy that inadvertently crosses a line between truth and falsehood."  *Allergan, Inc.*, 2024 WL 2882125, at *8.  It remains to be seen whether BFS Defendants will persist in their attempt to leverage the fraudulent certificate of insurance in connection with the pending motion for summary judgment or other matters related to the substance of the parties' claims and defenses.  The undersigned cautions BFS Defendants and their counsel that doing so may very well fall within Rule 11's prohibition against advocating for a position that lacks evidentiary support.  Fed. R. Civ. P. 11(b)(3).

When evaluating the propriety of Rule 11 sanctions against BFS Defendants, it cannot be overlooked that the factual basis underlying Plaintiffs' initial allegations against BFS Defendants and their counsel, which called into question their ethics and the candor of counsel, is unclear.  Mr. Rovner's declaration and affidavit supported Plaintiffs' allegations regarding the inauthenticity of the certificate of insurance, but the allegation that BFS Defendants and their counsel fabricated the certificate did not enjoy the same evidentiary support.  Indeed, Plaintiffs' initial notice relied on nothing more than conclusory assumptions based on the timing and sequence of events, which ultimately were not borne out by the subsequent limited discovery.  Just as grave as the submission of a falsified document is an ill-founded accusation of the same.  *Equal Emp't Opportunity Comm'n* v. *Great Steaks, Inc.*, 667 F.3d 510, 523 (4th Cir. 2012)

(affirming district court's denial of motion for sanctions where there was nothing more than "unsupported conjecture" that counsel filed motions in bad faith or that they unreasonably and vexatiously multiplied the proceedings).

The fact that additional sanctions beyond striking the fraudulent document are not being imposed (or recommended, as to a sanction that would call for dispositive relief) does not equate to a finding that the undersigned condones the actions of BFS Defendants and their counsel.  As was made plain during the motion hearing, even if not sanctionable conduct, the undersigned finds it inconceivable that an officer of the court would not seek to immediately correct the record upon learning that an exhibit filed in support of a request for substantive relief from the court was fraudulent.  Failure to do so diminishes both the integrity of the tribunal and the efficacy of counsel's advocacy in this and future cases.  The undersigned notes that the Maryland Attorneys' Rules of Professional Conduct, adopted by this Court in Local Rule 704, impose a duty to correct the record.  In particular, Rule 19-303.3(a) provides, in pertinent part, that an attorney shall not knowingly "fail to correct a false statement of material fact or law previously made to the tribunal by the attorney."  Md. Rule 19-303.3(a)(1).  This same rule further provides that "[i]f an attorney has offered material evidence and comes to know of its falsity, the attorney shall take reasonable remedial measures."  *Id*. at 19-303.3(a)(4).

To date, counsel for BFS Defendants has yet to correct the existing record or take any remedial measures with respect to the pending summary judgment motion, which is supported in part by a document that BFS Defendants and their counsel know to be fraudulent.  The proffered rationale that no filing was warranted because Judge Griggsby has held the summary judgment motion in abeyance pending resolution of the instant motion is unpersuasive.  ECF Nos. 150 at 15–16; 159.  Recognition of the fraudulent nature of the certificate of insurance is in no way at odds with Judge Griggsby's Order in that regard.  ECF No. 132.  Moreover, it dovetails precisely

with the one of the substantive questions pending before the undersigned and therefore would have promoted greater efficiency in resolving the instant motion.  Consistent with Rule 19-303.3(a)(1) and (4), BFS Defendants shall correct the record and take any appropriate remedial measures with respect to the fraudulent certificate of insurance, which they tendered to the Court as an exhibit to their pending summary judgment motion.

The issues and conduct presented in this referral call for the reaffirmance of "the principle that lawyers, who serve as officers of the court, have the first line task of assuring the integrity of the process." *Shaffer Equip. Co.*, 11 F.3d at 457.  "Each lawyer undoubtedly has an important duty of confidentiality to [their] client and must surely advocate [their] client's position vigorously, but only if it is truth which the client seeks to advance." *Id.*  While an attorney "has a duty to advance all colorable claims and defenses, the canons of professional ethics impose limits on permissible advocacy." *McCoy* v. *Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 438 (1988).  Importantly, "[a]ttorneys are obligated to act with candor in presenting claims for judicial resolution." *Id.* at 440; *Six*, 891 F.3d at 519 (same).

## III.    CONCLUSION

In light of the foregoing, it is hereby ORDERED that Plaintiffs' motion for sanctions is granted in part and denied in part.  A separate Order follows.

Date:  February 25, 2026                          _____/s/_____
                                                  Erin Aslan
                                                  United States Magistrate Judge