**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | ) | |
| JACOB YODER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 23-cv-01365-LKG |
| | ) | |
| v. | ) | Dated:  March 16, 2026 |
| | ) | |
| CONAWAY RACING & TRUCKING, | ) | |
| LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

In this civil action, the Plaintiffs, Jacob Yoder, Shawn Yoder and Natasha Yoder bring various state law claims against the Defendants, Conaway Racing & Trucking, LLC ("Conaway"); Aaron J. Pacheco, Builders FirstSource, Builders FirstSource, Inc., Builders FirstSource-Atlantic Group, Probuild Company, LLC (collectively, the "BFS Defendants"); D.R. Horton, Inc.; and an unnamed John Doe Defendant, arising from a motor-vehicle accident between Jacob Yoder's 1994 Ford Bronco and Conaway's tractor-trailer that occurred on October 2, 2020.  *See generally* ECF No. 52.  The BFS Defendants have moved for summary judgment on all claims against them in this case, pursuant to Fed. R. Civ. P. 56.  ECF No. 124 and 124-1.  The BFS Defendants have also moved to exclude and/or strike the expert report of the Plaintiffs' liability expert, Rose A. McMurray, pursuant to Local Rule 105.  ECF No. 123. These motions are fully briefed.  ECF Nos. 123, 124, 124-4, 126, 127 and 129.  No hearing is necessary to resolve the motions.  *See* L.R. 105.6 (D. Md. 2025).  For the reasons that follow, the Court: (1) **GRANTS-in-PART** and **DENIES-in-PART** the BFS Defendants' motion for summary judgment (ECF No. 124); (2) **DENIES** the BFS Defendants' motion to exclude and/or strike the expert report of Rose A. McMurray **(**ECF No. 123); (3) **ENTERS JUDGMENT** summarily in favor of the BFS Defendants on Counts I, III, V and VI of the amended complaint; and (4) **DISMISSES** Counts I, III, V and VI of the amended complaint as to the BFS Defendants.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    Factual Background

In this civil action, the Plaintiffs bring various state law claims against Conaway, the BFS Defendants, D.R. Horton, Inc., and an unnamed John Doe Defendant, arising from a motor-vehicle accident between Jacob Yoder's 1994 Ford Bronco and Conaway's tractor-trailer that occurred on October 2, 2020.  *See generally* ECF No. 52.  In the amended complaint, the Plaintiffs assert the following claims against the Defendants: (1) negligence against all of the Defendants; (2) negligent hiring and retention against the BFS Defendants; (3) negligent hiring, retention and supervision against the BFS Defendants and Conaway; (4) negligent entrustment against Conaway; (5) negligent entrustment against the BFS Defendants; (6) civil aiding and abetting against the BFS Defendants; (7) pecuniary damages against all of the Defendants.  *Id*. at ¶¶ 100-172.  As relief, the Plaintiffs seek, among other things, to recover monetary damages from the Defendants.  *Id*.

The Parties

Plaintiff Jacob Yoder is an adult individual who is incapacitated and a resident of the Commonwealth of Pennsylvania.  *Id*. at ¶ 1.

Plaintiff Shawn Yoder is the father of Jacob Yoder and a resident of the Commonwealth of Pennsylvania.  *Id*. at ¶ 2.

Plaintiff Natasha Yoder is the mother of Jacob Yoder and a resident of the Commonwealth of Pennsylvania.  *Id*. at ¶ 3.

Defendant Conaway Racing & Trucking, LLC is a Pennsylvania corporation, and/or a foreign corporation, and/or an unincorporated association, and/or a public corporation, and/or a partnership, and/or a sole proprietorship which has engaged in business within the Commonwealth of Pennsylvania.  *Id*. at ¶ 5.

Defendant Aaron J. Pacheco is resident of New Jersey.  *Id*. at ¶ 6.

Defendant Builders FirstSource is a Pennsylvania corporation, and/or a foreign corporation, and/or an unincorporated association, and/or a public corporation, and/or a

---

[1] The facts recited in this memorandum opinion the complaint; the Defendants' motion for summary judgment; the memorandum in support thereof; and the Plaintiffs' response in opposition thereto.  ECF Nos. 52, 124, 124-3, 124-4 and 126.  Unless stated otherwise, the facts contained herein are undisputed.

partnership, and/or a sole proprietorship which has engaged in business within the Commonwealth of Pennsylvania.  *Id*. at ¶ 7.

Defendant Builders FirstSource, Inc. is a Delaware corporation, and/or a foreign corporation, and/or an unincorporated association, and/or a public corporation, and/or a partnership, and/or a sole proprietorship.  *Id*. at ¶ 8.

Defendant Builders FirstSource, Atlantic Group, LLC is a Texas corporation, and/or a foreign corporation, and/or an unincorporated association, and/or a public corporation, and/or a partnership, and/or a sole proprietorship.  *Id*. at ¶ 9.

Defendant Probuild Company, LLC d/b/a Builders FirstSource is a Delaware corporation, and/or a foreign corporation, and/or an unincorporated association, and/or a public corporation, and/or a partnership, and/or a sole proprietorship.  *Id*. at ¶ 10.

The October 2, 2020 Accident

On October 2, 2020, at 6:45 a.m, an accident occurred between Jacob Yoder's Ford Bronco and Conaway Racing & Trucking, LLC's tractor-trailer, at the intersection of Peninsula Drive and Route 272 in North East, Maryland.  ECF Nos. 124-3 at ¶ 2; 124-6 at ¶¶ 74-76.  The driver of the Conaway tractor-trailer was Aaron Pacheco, who holds a valid commercial driver's license ("CDL").  ECF Nos. 124-3 at ¶ 3; 124-8 (Pacheco Document Production).  At the time of the accident, Mr. Pacheco was driving a tractor-trailer owned by Conaway.  ECF No. 124-9 (Pacheco's Answers to Plaintiffs' Interrogatories) at Nos. 3, 11, 14, 17-21; ECF No. 124-10 (Conaway's Answers to Plaintiffs' Interrogatories) at Nos. 19-26; ECF No. 124-11 at 2 (Pacheco Dep. Tr. at 15:1-22).

It is undisputed that Mr. Pacheco turned left, while traveling at a low rate of speed onto Route 272 from Peninsula Drive.  ECF No. 123-3 at ¶ 5.  It is also undisputed that Mr. Yoder was simultaneously driving toward Peninsula Drive on Route 272.  *Id.* at ¶ 6.  And so, Mr. Yoder impacted with Mr. Pacheco's trailer.  *Id*. at ¶ 7.

At the time of the collision, Mr. Pacheco was driving in the course and scope of his employment with Conaway, a federally licensed motor carrier.  ECF No. 124-9 (Pacheco's Answers to Plaintiffs' Interrogatories) at Nos. 3, 11, 14, 17-21; ECF No. 124-10 (Conaway's Answers to Plaintiffs' Interrogatories) at Nos. 19-26; ECF No. 124-11 at 2 (Pacheco Dep. Tr. at 15:1-22).  The police determined that Mr. Pacheco was at fault for failing to yield to Mr. Yoder.  ECF No. 124-7 at 10-11.

The Carrier Agreement

The Conaway trailer that Mr. Pacheco was pulling with Conaway's tractor carried roof trusses that are manufactured by the Defendant Builders FirstSource, Inc. ("BFS"), pursuant to a long-standing motor carrier agreement (the "Carrier Agreement") by and between BFS and Conaway. ECF No. 124-3 at ¶ 11; ECF No. 124-7 at 3-8. The trusses were a standard delivery and did not require any specific permits or special training outside of the CDL licensure held by Mr. Pacheco. ECF No. 124-3 at ¶ 12. The roof trusses were picked up by Mr. Pacheco at a BFS supply facility shortly before the accident occurred. *Id.* at ¶ 13; *see generally* ECF No. 124-6 (amended complaint).

The Carrier Agreement requires that the carrier maintain a "satisfactory" safety rating with the Federal Motor Carrier Safety Administration ("FMCSA"), hire competent drivers, maintain insurance, and abide by the FMCSA regulations, among other requirements. ECF No. 124-7 at 3-8. The Carrier Agreement also classifies Conaway as a carrier and independent contractor, and the agreement requires that Conaway exclusively employ and properly pay licensed drivers, as well as provide equipment subject to Conaway's sole control. *Id.* As required by the Carrier Agreement, Conaway has held a "satisfactory" rated carrier since 2016, which is the top rating awarded by FMCSA to only 5% of motor carriers nationwide. ECF No. 124-17 (FMCSA Safer Database.).

The BFS Defendants maintain that Conaway and Mr. Pacheco both understood that Conaway employed Mr. Pacheco. ECF No. 124-3 at ¶ 16; ECF No. 124-9 at 3 and 6 (Pacheco Interrogatories stating that he was performing services for Conaway on the date of the accident and was operating a tractor and trailer as an employee of Conaway); ECF No. 124-11 at 2 (Pacheco Dep. Tr. at 15:1-22). Given this, the BFS Defendants maintain that Conaway made all decisions regarding what drivers it hired to complete deliveries, including Mr. Pacheco. ECF No. 124-3 at ¶ 17; *see also* ECF No. 124-14 at 12 (Conaway Dep. Tr. at 30:1-25).

Mr. Pacheco's Safety Record

With regards to Mr. Pacheco's driving safety record, the Plaintiffs maintain that Mr. Pacheco was "unreliable," because he disabled another Conaway tractor the night before, failed to yield and paralyzed the Plaintiff Jacob Yoder. ECF No. 127 at 6. The Plaintiffs also maintain that Mr. Pacheco was not a safe driver, because the New Jersey Department of Health ("NJDOH") suspended his certification as an EMT in May 2020, after he was "in possession of a

4

large black Survivor brand stainless steel hunting knife and brandished the weapon while on the property of AtlantiCare Regional Medical Center." *Id*.; *see also* ECF No. 127-6 (NJDOH Notice of Summary Suspension, dated May 18, 2020.). The NJDOH also observed that the police found that Mr. Pacheco was "under the influence of drugs or alcohol and operating a motor vehicle in a manner that endangered public safety." ECF No. 127 at 6; ECF No. 127-6 at 2. And so, the NJDOH concluded that Mr. Pacheco's continued certification "poses an immediate or serious threat to the public health, safety or welfare," and suspended his certification. ECF No. 127 at 6; ECF No. 127-6 at 2.

The Certificate Of Insurance

The BFS Defendants maintain that they received Conaway's certificate of insurance ("COI"), establishing coverage over the applicable timeframes, when they entered into the Carrier Agreement in 2016 and again at the time of the October 2, 2020, Accident. ECF No. 124-7 at 12-15; ECF No. 124-15 at 9 (Shamblin Dep. Tr. at 64:6-16.). In this regard, the BFS Defendants maintain that they had specific in-house team members checking carrier applications to ensure they were competent and used third-party vendors to monitor its carriers' ratings and insurance coverage on an ongoing basis. ECF No. 124-3 at ¶ 28. The BFS Defendants also maintain that they ensured that Conaway held the insurance coverage required under the Federal Motor Carriers Safety Act's ("FMCSA") regulations before entering into the Carrier Agreement. ECF No. 124-3 at ¶ 23.

In addition, the BFS Defendants maintain that they ensured that Conaway was a qualified, licensed motor carrier, before entering into the Carrier Agreement with Conaway. *Id.* at ¶ 24. And so, the BFS Defendants contend that they took additional steps to ensure that Conaway was qualified and properly insured. *Id*. at ¶ 25.

But the Plaintiffs maintain that the valid certificates of insurance that BFS produced during discovery show that Conaway never carried any excess insurance and was uninsured on the date of the October 2, 2020, Accident. ECF No. 127 at 5. The Plaintiffs also maintain that Conaway was unfit, with four FMCSA authority revocations, multiple unsafe driving violations, a marked deterioration in driving performance from May to August 2020, and multiple vehicle maintenance violations, coupled with persistent noncompliance with the Carrier Agreement by failing to maintain the required insurance coverage. *Id.*; *see also* ECF No. 127-2 (showing no excess insurance coverage). And so, the Plaintiffs contend that these violations flag Conaway as

a high-risk carrier.  ECF No. 127 at 5; *see also* ECF No. 127-1 (Rose A. McMurray Expert Report).

The Plaintiffs also contend that the BFS Defendants produced a COI, shortly before discovery closed, which is fraudulent.  ECF No. 127 at 6-7; *see also* ECF No. 127-8 (Affidavit of Scott Rovner).  Specifically, the Plaintiffs allege that the COI "has blatant errors: it uses the wrong carrier name ('Conaway Trucking & Racing LLC' instead of 'Conaway Racing & Trucking LLC'), lists an incorrect NAIC number for Drive NJ Insurance (135 instead of 11410, per NAIC database), has inconsistent fonts, includes a handwritten 'X' in the 'Any Auto' box, mutually exclusive 'Any Auto' and 'Scheduled Autos' boxes checked, shows a cut-and-pasted section with a scanning line and misaligned text, uses a wrong date format, omits expired equipment and workers' compensation coverages, and explicitly does not waive subrogation despite the Carrier Agreement's requirement."  ECF No. 127 at 7.  And so, the Plaintiffs contend that the BFS Defendants rely on this fraudulent COI to support its summary judgment memorandum.  *Id*.

Given this, the Plaintiffs maintain that BFS knew that Conaway's auto insurance was expiring in August 2020, but never followed up thereafter before continuing to use Conaway, including for the subject load on October 2, 2020.  ECF No. 127 at 6.  And so, the Plaintiffs contend that Conaway was uninsured on October 2, 2020.  *Id*. at 7-8.

<u>The Plaintiffs' Claims</u>

The Plaintiffs assert six claims against the BFS Defendants in the amended complaint. First, in Count I of the amended complaint, the Plaintiffs allege that, as a direct and proximate result of Mr. Pacheco's negligent breach of the duties owed to Jacob Yoder to operate a tractor-trailer in a safe and proper manner, Mr. Yoder sustained conscious pain and suffering and the BFS Defendants are jointly and severally liable with Mr. Pacheco for these injuries.  ECF No. 52 at ¶¶ 100-103.  The Plaintiffs also allege that the BFS Defendants are vicariously liable for the negligent acts and harm caused by Mr. Pacheco, because Mr. Pacheco performed such acts in the course and scope of his employment with the BFS Defendants and Conaway.  *Id*.

Second, in Count II of the amended complaint, the Plaintiffs assert a negligent hiring and retention claim against the BFS Defendants and allege that the BFS Defendants were negligent in hiring and retaining Conaway as an interstate motor carrier to deliver building materials, because they knew or should have known that Conaway's safety ratings called into question its

competence in safely transporting building materials by truck on the highways and that Conaway lacked the minimum insurance required by the FMCSA regulations. *Id*. at ¶¶ 104-110.

Third, in Count III of the amended complaint, the Plaintiffs assert negligent hiring, retention and supervision claims against the BFS Defendants and they allege that the BFS Defendants failed to use proper care in selecting, hiring, retaining, and supervising Mr. Pacheco, and Conaway failed to use proper care in selecting, hiring, retaining and supervising Mr. Pacheco. *Id*. at ¶¶ 111-117.

Fourth, in Count V of the amended complaint, the Plaintiffs assert a negligent entrustment claim against the BFS Defendants and they allege that the BFS Defendants were negligent in entrusting the roof trusses to Conaway, because, among other things, the BFS Defendants neglected their duty to investigate Conaway's driving and safety record, to conduct a driver road test, and to otherwise perform a meaningful inquiry regarding Conaway and the BFS Defendants knew or should have known that the Conaway Defendants were not experienced enough, not adequately trained, and not properly qualified to safely transport the roof trusses on the highway by truck. *Id*. at ¶¶ 125-131.

Fifth, in Count VI of the amended complaint, the Plaintiffs assert a civil aiding and abetting claim against the BFS Defendants and allege that the BFS Defendants hired, paid, and authorized the Conaway Defendants to transport the roof trusses by truck on the highway despite knowing that the Conaway Defendants were neither qualified nor insured to safely execute those responsibilities, in violation of the law. *Id.* at ¶¶ 132-137.  They allege that but for the BFS Defendants assisting, aiding, encouraging, and hiring the unqualified and uninsured Conaway Defendants to transport the roof trusses on October 2, 2020, the crash never would have occurred. *Id*.

Lastly, in Count VII of the amended complaint, the Plaintiffs assert a claim for pecuniary damages against, among others, the BFS Defendants. *Id*. at ¶¶ 171-172.  And so, the Plaintiffs seek, among other things, to recover monetary damages from the BFS Defendants. *Id*.

**B.    Relevant Procedural Background**

The Plaintiffs originally commenced this matter in the Court of Common Pleas for Philadelphia County, Pennsylvania.  ECF No. 6.  On September 13, 2022, the Defendants removed the case to the United States District Court for the Eastern District of Pennsylvania.  ECF No. 1.  On May 22, 2023, the case was transferred to this Court.  ECF No. 34.

On July 10, 2025, the BFS Defendants filed a motion to exclude and/or strike the Plaintiffs' liability expert Rose A. McMurray, pursuant to Local Rule 105. ECF No. 123. On July 24, 2025, the Plaintiffs filed a response in opposition to the BFS Defendants' motion to exclude. ECF No. 126.

On July 10, 2025, the BFS Defendants filed a motion for summary judgment, pursuant to Fed. R. Civ. P. 56, and a memorandum in support thereof. ECF No. 124 and 124-1, 124-2, 124-3 and 124-4. On July 24, 2025, the Plaintiffs filed a response in opposition to the BFS Defendants' motion for summary judgment. ECF No. 127.

The BFS Defendants' motions having been fully briefed, the Court resolves the pending motions.

## III.    LEGAL STANDARDS

### A.    Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993). But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim. *See Celotex Corp.*, 477 U.S. at 322-23. Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* at 323. And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to

confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997). And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

### B. Negligent Hiring And Negligent Entrustment Claims

Maryland recognizes a common law tort based on negligence in hiring an independent contractor. *Bowman v. Huezo*, No. 06-1585, 2007 WL 9780487, at *5-6 (D. Md. Dec. 20, 2007); *see also Schramm v. Foster*, 341 F. Supp. 2d 536, 551 (D. Md. 2004) (*citing Rowley v. Mayor and City Council of Balt.*, 505 A.2d 494, 497 (1986)). To prevail on a negligent hiring claim, a plaintiff must prove the existence of a duty owed by a defendant to him, a breach of that duty, and a legally cognizable causal relationship between breach of duty and the harm suffered. *Perry v. Asphalt & Concrete Servs Inc.*, 133 A.3d 1143, 1155 (2016); *accord Ortiz v. Ben Strong Trucking, Inc.*, 624 F. Supp. 3d 567, 584-85 (D. Md. 2022).

In this regard, Maryland Courts have held that, generally, an employer has a duty "to use reasonable care to select employees competent and fit for the work assigned to them and to refrain from retaining the services of an unfit employee," regardless of whether one engages an agent or independent contractor. *Perry*, 133 A.3d at 1155-56; *see also Henley v. Prince George's Cnty.*, 503 A.2d 1333, 1341 (1986). This duty extends to "members of the public who would reasonably be expected to come into contact" with the person or persons hired, including pedestrians and other motorists. *Perry*, 133 A.3d at 1156 (quoting *Henley*, 503 A.2d at 1341). In addition, the negligent hiring must be the proximate cause of the plaintiff's injury. *Id.* at 1157; *see also Bowman*, 2007 WL 9780487, at *6. And so, the duty to use reasonable care in the selection of carriers includes, at least, the duty to: (1) check the safety statistics and evaluations of the carriers with whom it contracts available on the SafeStat database maintained by FMCSA, and (2) maintain internal records of the persons with whom it contracts to assure that they are not manipulating their business practices in order to avoid unsatisfactory SafeStat ratings. *Bowman,* 2007 WL 9780487, at *5-6 (quoting *Schramm*, 341 F. Supp. 2d at 551).

Under Maryland law, negligent entrustment is defined as: (1) the making available to another a chattel which the supplier; (2) knows or should have known the user is likely to use in a manner involving risk of physical harm to others; and (3) the supplier should expect to be endangered by its use. *Schramm*, 341 F. Supp. 2d at 546-47 (citing *McGuiness v. Brink's Inc.*, 60 F. Supp. 2d 496, 500 (D. Md. 1999)).

### C.  Joint And Several Liability And Vicarious Liability

Under Maryland law, "[j]oint liability is predicated on the existence of two or more individuals who have each committed wrongs and are both legally responsible for the damage caused to a person or property by the commission of those wrongs." *Rivera v. Prince George's Cnty. Health Dep't*, 649 A.2d 1212, 1221-22 (Md. Ct. Spec. App. 1994).  And so, Maryland law recognizes joint and several liability when joint tortfeasors have acted in concert.  *Id*. at 1221.

Under the doctrine of *respondeat superior*, an employer is vicariously liable for the tortious conduct of his employee or agent when that employee or agent is acting within the scope of the master-servant relationship.  *Schramm*, 341 F. Supp. 2d at 543.  An agency relationship "results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."  *Id*. (quoting Restatement (Second) of Agency, § 1(1) (1958)).  An agency relationship may be established by written agreement or inference.  *Id*. (citing *Patten v. Board of Liquor*, 667 A.2d 940 (1995)).  And so, this Court has held that a defendant is not vicariously liable for a driver's negligence when the underlying carrier agreement provides that: (1) the defendant and carrier's relationship is that of an independent contractor; (2) the carrier employs and pays all drivers; (3) the carrier provides the drivers' equipment, and (4) the carrier is solely responsible for the operation of the equipment necessary for the transport.  *Id.* at 543-44.

Relevant to the pending motion, Maryland courts have recognize that "'[p]ersons who render service but retain control over the manner of doing it are not servants,' but independent contractors."  *Perry*, 133 A.3d at 1155 (quoting *Gallagher's Estate v. Battle*, 122 A.2d 93, 98 (1956)).  A company hiring an independent contractor is generally shielded from liability for the negligence of the independent contractor's employees.  *Gallagher's Estate*, 122 A.2d at 98 ("[The entity engaging the independent contractor] is not responsible for incidental negligence while such agent is conducting the authorized transaction.").  But there are exceptions to this general rule.  "[A]n employer is liable for the acts of an independent contractor under the theory

of negligent hiring if the harm is caused by 'some quality in the contractor which made it negligent for the employer to entrust the work to him.'" *Perry*, 133 A.3d at 1155. And so, a plaintiff can establish liability in a negligent hiring claim against an independent contractor, by proving "two links in the causal chain:" (1) that the failure of an employer to undertake a reasonable inquiry resulted in the contractor's hiring and (2) if a negligent hiring is shown, that the hiring was a proximate cause of the plaintiff's injury." *Id*.

### D. Civil Aiding And Abetting

This Court has held that the same standard for aiding and abetting in a criminal context—knowingly associating oneself with and participated in the criminal venture—applies in determining aiding and abetting liability in civil cases. *Schramm,* 341 F. Supp. 2d at 550-51. A civil aiding and abetting requires that "the wrongdoer engag[es] in acts of encouragement or assistance to the person actually committing the wrongful act." *Saadeh v. Saadeh, Inc.*, 819 A.2d 1158, 1171 (Md. Ct. Spec. App. 2003). "To be liable in tort, the aider or abettor must have engaged in assistive conduct that he would know would contribute to the happening of that act." *Id.*

### E. Section 14704

Title 49, United States Code, Section 14704 governs the rights and remedies for persons injured by carriers or brokers. 49 U.S.C. § 14704(a). Section 14704(a) provides that "[a] person injured because a carrier or broker providing transportation or service . . . does not obey an order of the Secretary or the Board, . . . may bring a civil action to enforce that order." 49 U.S.C. § 14704(a)(1). The statute also provides that "[a] carrier or broker providing transportation or service . . . is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part." 49 U.S.C. § 14704(a)(2). In this regard, the Federal Motor Carrier Safety Regulations ("FMCSR") that implement this statute define a "shipper" as, among other things, "a person who tenders property to a motor carrier or driver of a commercial motor vehicle for transportation in interstate commerce." 49 C.F.R. § 390.5. The FMCSR "are applicable to all employers, employees, and commercial motor vehicles that transport property or passengers in interstate commerce. *Id*. An "employer" is defined as "any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it." *Id.*

11

### F. Fed R. Evid. 702

Lastly, Fed. R. Evid. 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise, if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Supreme Court has recognized that Fed. R. Evid. 702 requires district courts to perform a critical "gatekeeping" function concerning the admissibility of expert scientific evidence. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1998). Given this, it is the Court's responsibility to "'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert*, 509 U.S. at 597).

Under *Daubert*, a Fed. R. Evid. 702 evidentiary inquiry focuses on two threshold inquiries: reliability and relevance. *See Daubert*, 509 U.S. at 599. First, the "reliability" component requires that this Court "ensure that the proffered expert opinion is 'based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods.'" *Nease*, 848 F.3d at 229 (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)). Second, the "relevance" component requires that the Court find that the proposed testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. And so, "if an opinion is not relevant to a fact at issue, *Daubert* requires that it be excluded." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021). In addition, Fed. R. Evid. 704(a) permits the Court to admit expert testimony that "embraces an ultimate issue" to be decided by the trier of fact. Fed. R. Evid. 704(a).

## IV.    LEGAL ANALYSIS

The BFS Defendants have moved for summary judgment on all claims brought against them in this matter, pursuant to Fed. R. Civ. P. 56, upon the following grounds: (1) the Plaintiffs'

negligent hiring claim in Count II of the amended complaint fails as a matter of law, because the Plaintiffs cannot show proximate causation and the BFS Defendants' due diligence in selecting Conaway satisfied the alleged duty owed in this case; (2) the Plaintiffs' joint and several liability and vicarious liability negligence claims in Count I of the amended complaint also fail as a matter of law, because the BFS Defendants did not employ or control Mr. Pacheco; (3) the Plaintiffs' negligent hiring, retention and supervision claim in Count III of the amended complaint must be dismissed, because the Plaintiffs cannot establish liability for Mr. Pacheco's negligence under 49 C.F.R. §§ 390.3(a), (i) and (l) and 390.5; (4) the Plaintiffs' negligent entrustment claim in Count V of the amended complaint fails as a matter of law, because the BFS Defendants did not negligently entrust Mr. Pacheco with the tractor-trailer and Maryland law does not recognize negligent entrustment claims for roof trusses in the context of a motor vehicle accident; (6) the Plaintiffs' civil aiding and abetting claim in Count VI of the amended complaint similarly fails as a matter of law, because the BFS Defendants did not assist Conaway or Mr. Pacheco in violating any law; and (7) the Plaintiffs' pecuniary damages claim in Count VII of the amended complaint fails as a matter of law, because the BFS Defendants were not negligent. ECF No. 124-4 at 11-29. And so, the BFS Defendants request that the Court grant their motion for summary judgment and dismiss all claims brought against them in this case. *Id*. at 29.

The Plaintiffs counter that summary judgment is not warranted in this case, because: (1) there are material facts in dispute regarding each element of their negligent hiring claim in Count II of the amended complaint; (2) there are material facts in dispute regarding their civil aiding and abetting claim in Count VI of the amended complaint that preclude summary judgment; (3) there are also material facts in dispute regarding their pecuniary damages claims in Count VII of the amended complaint that preclude summary judgment. ECF No. 127 at 8-18. And so, the Plaintiffs request that the Court deny the BFS Defendants' motion for summary judgment. *Id*. at 19.

Lastly, the BFS Defendants seek to exclude, or strike the expert report of the Plaintiffs' liability expert, Rose A. McMurray, upon the grounds that her expert opinions on liability are unreliable. ECF No. 123 and 123-1. And so, the BFS Defendants request that Ms. McMurray be struck as an expert witness in this case. ECF No. 123-1 at 12-13.

The Plaintiffs counter that the Court should not strike or exclude Ms. McMurray's expert report and opinions, because Ms. McMurray's opinions are based upon her significant knowledge, training, and experience in the area of motor carrier safety, industry practices, the standard of care and the facts provided in her expert report. ECF No. 126. And so, the Plaintiffs request that the Court deny the BFS Defendants' motion to exclude. *Id.* at 11.

For the reasons that follow, a careful reading of the expert report of Rose A. McMurray shows that the report and the opinions contained therein are based upon the factual evidence in this case, and the applicable motor carrier safety regulations and industry standards, and that Ms. McMurray has significant experience working in the area of motor carrier safety. And so, the Court declines to strike and/or exclude Ms. McMurray as an expert witness in this case.

In addition, the undisputed material facts in this case show that there are material facts in dispute, regarding whether the BFS Defendants proximately caused the Plaintiffs' injuries, and whether the BFS Defendants breached their duty to hire a competent independent contractor, which preclude entry of summary judgment on the Plaintiffs' negligent hiring and retention claim in Count II of the amended complaint. But the undisputed material facts show that the Plaintiffs cannot prevail on their negligence claim, based upon a theory of joint and several liability and vicarious liability, in Count I of the amended complaint, because the BFS Defendants did not employ or control Mr. Pacheco.

The undisputed material facts also show that the Plaintiffs cannot prevail on their negligent hiring, retention and supervision claim in Count III of the amended complaint, because they cannot establish liability under 49 C.F.R. §§ 390.3(a), (i) and (l) and 390.5. The Plaintiffs' negligent entrustment claim in Count V of the amended complaint is also problematic, because the unrebutted evidence shows that the BFS Defendants did not negligently entrust Mr. Pacheco with the tractor-trailer at issue in this case. The unrebutted evidence also shows that the Plaintiffs' civil aiding and abetting claim in Count VI of the amended complaint fails as a matter of law, because the BFS Defendants did not assist or encourage Conaway or Mr. Pacheco in Mr. Pacheco's negligent driving.

Lastly, to the extent that the Plaintiffs' pecuniary damages claims are based upon the torts alleged in Counts I, III, V and VI of the amended complaint, these damages also fail as a matter of law. And so, the Court: (1) GRANTS-in-PART and DENIES-in-PART the BFS Defendants' motion for summary judgment (ECF No. 124); (2) DENIES the BFS Defendants' motion to

14

exclude and/or strike the expert report of Rose A. McMurray (ECF No. 123); (3) ENTERS JUDGMENT summarily in favor of the BFS Defendants on Counts I, III, V and VI of the amended complaint; and (4) DISMISSES Counts I, III, V and VI of the amended complaint as to the BFS Defendants.

### A.  The Court Declines To Exclude Ms. McMurray's Expert Report

As a preliminary matter, the Court declines to strike and/or exclude the expert report and testimony of the Plaintiffs' liability expert, Rose A. McMurray.  It is well-established that the proponent of expert testimony "bears the burden of establishing its admissibility."  *Morris v. Biomet, Inc.*, 491 F. Supp. 3d 87, 97 (D. Md. 2020).  In this regard, Fed. R. Evid. 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise, if:  (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in  issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Under *Daubert*, a Fed. R. Evid. 702 evidentiary inquiry focuses on two threshold inquiries: reliability and relevance.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 599 (1993).  First, the "reliability" component requires that this Court "ensure that the proffered expert opinion is 'based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods.'"  *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)).  Second, the "relevance" component requires that the Court find that the proposed testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue."  *Daubert*, 509 U.S. at 591.  And so, "if an opinion is not relevant to a fact at issue, *Daubert* requires that it be excluded."  *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021).

In this case, the Court is satisfied that Ms. McMurray's expert report meets the above standards of reliability and relevance for several reasons.  First, Ms. McMurray is qualified to provide an expert opinion on the topics covered in her expert report.  A careful review of

Ms. McMurray's expert report reveals that she is the former Chief Safety Officer for the FMCSA and that she has had decades of trucking safety experience. ECF No. 127-4. Ms. McMurray is currently employed part-time as the Chief Transportation Safety Advisor for FDR Safety, LLC, which is a full-service safety and health consulting company, and she has held this position for more than a decade. *Id*. at 3.

Second, Ms. McMurray's expert report is reliable because the report explains the basis for her expert opinions. In her expert report, Ms. McMurray describes the regulatory framework for operating as a motor carrier in the United States and she addresses the specific facts of this case. *Id*. at 5-7. In this regard, Ms. McMurray explains that she reviewed documents regarding the facts of this case, road safety reports, motor carrier policies and practices and that she applied her skills acquired during her tenure as a Chief Safety Officer for the FMCSA in reaching the expert opinions contained in her report. *Id*. at 3-4.

Third, Ms. McMurray's expert opinions are relevant to the Plaintiffs' negligent hiring and negligent entrustment claims in this case. Notably, Ms. McMurray provides the following opinions related to the BFS Defendants' alleged negligent conduct in this case: (1) Conaway's safety profile on the FMCSA website shows multiple violations related to driver speeding and at least one driver lacking proper licensing credentials, but she found no evidence that the BFS Defendants sought an explanation from Conaway about these apparent violations; (2) the BFS Defendants had information showing that Conaway's liability insurance would expire in August 2020, but the BFS Defendants did not follow up with Conaway to ensure that the liability insurance did not lapse; (3) Conaway did not have liability insurance at the time of the October 2, 2020, Accident; (4) the BFS Defendants knew that Conaway was uninsured at that time, in violation of the Carrier Agreement and industry standards; (5) the BFS Defendants failed to do their due diligence to ensure that they entrusted goods with a competent motor carrier; and (6) the BFS Defendants should be held responsible for their decision to conduct business with "a high-risk motor carrier." *Id*. at 7-10.

While the BFS Defendants understandably disagree with Ms. McMurray's expert opinions, they have not shown that her opinions are unreliable and should be excluded. The BFS Defendants argue that Ms. McMurray's expert report is unreliable and irrelevant, because: (1) the alleged Conaway speeding violations on the FMCSA website are not relevant to the October 2, 2020, Accident; (2) the expert report lacks details about the alleged insufficient Conaway

16

driver credentials; (3) the report does not explain why Mr. Pacheco's CDL license is insufficient to satisfy industry safety standards; (4) Conaway had insurance coverage at the time of the October 2, 2020, Accident; and (4) the term "high risk" carrier is not defined in the expert report. ECF No. 123-1 at 4-9. But, these concerns largely reflect disagreements about the evidence in this case and the weight that should be given to Ms. McMurray's opinions by the trier-in-fact.

The BFS Defendants will have the opportunity to explore these concerns during their cross-examination of Ms. McMurray at trial. But they have not advanced a proper ground for striking or excluding Ms. McMurray's expert report under Rule 702. And so, the Court DENIES the BFS Defendants' motion to exclude and/or strike (ECF No. 123).

### B. Summary Judgment Is Not Warranted On The Plaintiffs' Negligent Hiring And Retention Selection Claim

Turning to the BFS Defendants motion for summary judgment, the undisputed material facts make clear that there are material facts in dispute in this case that preclude summary judgment on the Plaintiffs' negligent hiring and retention claim in Count II of the amended complaint. To establish negligent hiring and retention under Maryland law, the Plaintiffs must show that: (1) the BFS Defendants had a duty to use reasonable care in selecting a motor carrier; (2) the BFS Defendants breached that duty; (3) the BFS Defendants' breach caused the injury; and (4) damages resulted. *Perry v. Asphalt & Concrete Servs Inc.*, 133 A.3d 1143, 1155 (2016). In Count II of the complaint, the Plaintiffs allege that the BFS Defendants were negligent in its decision to hire Conaway as an interstate carrier to deliver building materials. ECF No. 52 at ¶¶ 104-110. And so, as the BFS Defendants correctly observe, the Plaintiff must show, among other things, that the risk of harm causing the selection of Conaway as an independent contractor to be negligent is the same risk of harm that proximately caused the Plaintiffs injuries in this case. *Perry*, 133 A.3d at 1157 (*citing Henley*, 503 A.2d at 1340).

The Court agrees that there are material facts in dispute that must be resolved by a jury to determine whether the Plaintiffs can make this showing for several reasons. First, there is a material fact in dispute in this case about whether Conaway was insured on the date of the October 2, 2020, Accident. While the parties disagree about whether Conaway was insured on that date, the Plaintiffs argue with persuasion that a lapse of Conaway's insurance could support their claims that the BFS Defendants ignored important information about Conaway's operations and safety record in the months leading up to the October 2, 2020, Accident.

The Plaintiffs also convincingly argue that summary judgment is not appropriate on this claim, even if the Court finds that any lapse of Conaway's insurance could not have caused the accident at issue in this case. Relying on *Perry*, 133 A.3d at 1146, 1157 and 1158-59, the BFS Defendants argue that any lack of insurance coverage cannot be causally related to Mr. Pacheco's negligent driving in this case and, as a result, the Plaintiffs cannot establish the proximate causation element of their negligent hiring claim. ECF No. 124-4 at 13. But even if the Court were to adopt the BFS Defendants' reasoning, the Plaintiffs point to other alleged safety violations by Conaway to support their negligent hiring and retention claim.

Notably, the Plaintiffs point to evidence showing that the SMS data for Conaway on the FMCSA website shows that Conaway had four authority revocations, multiple violations for unsafe driving and vehicle maintenance failures near the time of the October 2, 2020, Accident. *See* ECF No. 127-3.[2] The Plaintiffs also point to evidence showing that Conaway's maintenance scores show a monthly average of 41 vehicle maintenance violations and that Conaway's FMCSA operating authority was revoked for the fourth time on August 5, 2019, approximately 14 months before the October 2, 2020, Accident. *Id*.

While the BFS Defendants do not agree that this evidence shows they failed to exercise due diligence in retaining Conaway, they also do not dispute the facts regarding Conaway's safety violations. *See* ECF No. 124-4. Given this, the Court is satisfied that the Plaintiffs can advance evidence at trial to show that the BFS Defendants failed to inquire about Conaway's safety record and to confirm that Conaway satisfied the safety requirements under the Carrier Agreement. And so, summary judgment is not appropriate on the Plaintiffs' negligent hiring and retention claim. *Schramm v. Foster*, 341 F. Supp. 2d 536, 551-53 (D. Md. 2004).

The undisputed material facts in this case also do not foreclose the possibility that the Plaintiffs will be able to show that the BFS Defendants breached their duty to use reasonable care in selecting an independent contractor who is "competent and fit for the work assigned to them." *Perry*, 133 A.3d at 1155. As discussed above, the Plaintiffs contend that the BFS Defendants failed "to undertake a reasonable inquiry" into Conaway's safety and compliance with federal regulations and industry standards, including insurance requirements. While the

---

[2] The Plaintiffs contend that SMS data show that Conaway's unsafe driving scores increased significantly between May and October 2020, with a monthly average of nearly 12 driver inspections resulting in unsafe driving violations. ECF No. 127-3.

Court takes no position on whether the Plaintiffs will ultimately be able to prevail on this element of their negligent hiring claim, the Court is satisfied that the Plaintiffs can advance evidence at to show breach of this and that this issue should also be resolved by the jury.

For each these reasons, the Court DENIES the BFS Defendants' motion for summary judgment on Count II of the amended complaint. Fed R. Civ. P. 56.

### C. The Plaintiffs' Joint And Several And Vicarious Negligence Liability Claims Fail

The BFS Defendants' arguments in support of granting summary judgment on the Plaintiffs' joint and several liability and vicarious liability negligence claims in Count I of the amended complaint are more convincing. Under Maryland law, "[j]oint liability is predicated on the existence of two or more individuals who have each committed wrongs and are both legally responsible for the damage caused to a person or property by the commission of those wrongs. *Rivera v. Prince George's Cnty. Health Dep't*, 649 A2d 1212, 1121-22 (Md. Ct. Spec. App. 1994). And so, Maryland law recognizes joint and several liability when joint tortfeasors have acted in concert. *Id*. at 1121. The undisputed material facts show that the BFS Defendants hired Mr. Pacheco's employer, Conaway, as an independent contractor. ECF No.124-7 at 8 (Carrier Agreement providing that Conaway is an independent contractor). In this regard, the owner of Conaway, Patrick Conaway, testified during his deposition that the BFS Defendants were not involved in Conaway's decision to hire Pacheco. ECF No. 124-14 at 13 (Conaway Dep. Tr. at 37:2-21).

Given this unrebutted evidence, there can be no genuine dispute that the BFS Defendants had no role in hiring Mr. Pacheco, or in directing his actions on the date of the October 2, 2020, Accident. And so, the Court agrees with the BFS Defendants that the Plaintiffs cannot establish joint and several liability against the BFS Defendants, because the BFS Defendants did not act with a common design or understanding to accomplish Mr. Pacheco's negligent driving.

For similar reasons, the Plaintiffs cannot establish vicarious liability with respect to Mr. Pacheco's negligent driving. To hold the BFS Defendants vicariously liable for Mr. Pacheco's negligence, the Plaintiffs must show that an agency relationship existed between them and Mr. Pacheco. *See Schramm*, 341 F. Supp. 2d at 543-46. But, as discussed above, the undisputed material facts show that the BFS Defendants had no role in the decision to hire or supervise Mr. Pacheco, or in the conduct of Mr. Pacheco during the October 2, 2020, Accident. Rather, the evidence make clear that Conaway had the sole responsibility of hiring, training and supervising

19

Mr. Pacheco. ECF No. 124-9 at 3 and 6 (Pacheco Interrogatories stating that he was performing services for Conaway on the date of the accident and was operating a tractor and trailer as an employee of Conaway); ECF No. 124-7 at 3-8 (Carrier Agreement). As the BFS Defendants correctly observe, Maryland courts do not impose vicarious liability on an employer for an independent contractor's negligence. *Schramm*, 341 F. Supp. 2d at 543-45.

Given this, the undisputed material facts also show that the Plaintiffs cannot establish vicarious liability as to the BFS Defendants. And so, the Court also GRANTS the BFS Defendants' motion for summary judgment on Count I of the amended complaint.

### D.  The Plaintiffs Cannot Prevail On Their Negligent Hiring Claim

The Plaintiffs also appear to have conceded that they cannot prevail on their negligent hiring claim against the BFS Defendants related to the hiring of Mr. Pacheco. In Count III of the amended complaint, the Plaintiffs allege that the BFS Defendants were negligent in the hiring, retention and supervision of Mr. Pacheco. ECF No. 52 at ¶¶ 111-117. But, the Court agrees with the BFS Defendants that this claim must fail as a matter of law, because the Plaintiffs cannot establish liability for Mr. Pacheco's negligence under the applicable Federal Safety Motor Carrier Regulations, found at 49 C.F.R. §§ 390.3 and 390.5.

Notably, it is undisputed in this case that the BFS Defendants are shippers and, thus, not covered by these regulations and 42 U.S.C. § 14704. *See generally* ECF Nos. 124-4 and 127; *see also* 42 U.S.C. § 14704(a)(2) (providing that "a carrier or broker providing transportation or service . . . is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part"). Given this, the Plaintiffs cannot hold the BFS Defendants liable under these provisions. *See* 49 C.F.R. § 390.5 (defining "shipper" as "a person who tenders property to a motor carrier or driver of a commercial motor vehicle for transportation in interstate commerce."). And so, the Court also GRANTS the BFS Defendants motion for summary judgment on Count III of the amended complaint.

### E.     The Plaintiffs Cannot Prevail On Their Negligent Entrustment Claim

As the Plaintiffs also appear to acknowledge, the Plaintiffs cannot prevail on their negligent entrustment claim against the BFS Defendants in Count V of the amended complaint, because the roof trusses did not cause the October 2, 2020, Accident. To prove negligent entrustment, the Plaintiffs must show that: (1) the BFS Defendants made chattel available to another; (2) the BFS Defendants supplied the chattel knowing, or that they should have known,

that the entity receiving the chattel would likely use the chattel in a manner involving risk of physical harm to others; (3) the BFS Defendants expected endangerment by the chattel's use; and (4) that negligent entrustment caused the Plaintiffs' injuries. *See Schramm*, 341 F. Supp. 2d at 546-47 (citing *McGuiness v. Brink's Inc.*, 60 F. Supp. 2d 496, 500 (D. Md. 1999)); *see also Moore v. Myers*, 868 A.2d 954, 967 (Md. Ct. Spec. App.2005) (explaining that the plaintiff must prove that the plaintiff's injuries were caused by a known quality of the entrusted individual, and that quality involves an unreasonable risk of physical harm to the plaintiff).

The Court agrees with the BFS Defendants that the Plaintiffs cannot show that the roof trusses at issue in this case are the injury-causing chattel to prevail on this claim. The undisputed material facts show that the tractor-trailer driven by Mr. Pacheco caused the October 2, 2020, Accident. In this regard, it is undisputed that Mr. Pacheco failed to yield to the vehicle driven by Jacob Yoder and that the tractor-trailer collided with Mr. Yoder's vehicle, causing the October 2, 2020, Accident. ECF No. 124-3 at ¶¶ 5-6 (stating that it is undisputed that Mr. Pacheco turned left while driving at a low rate of speed onto Route 272 from Peninsula Drive, simultaneously Mr. Yoder was driving towards Peninsula Drive on Route 272 and Mr. Yoder impacted with Mr. Pacheco's trailer). Given this, the tractor-trailer supplied by Conaway, rather than the roof trusses supplied by the BFS Defendants, is the injury-causing agent in this case. And so, the Cout GRANTS the BFS Defendants' motion for summary judgment on the Plaintiffs' negligent entrustment claim in Count V of the amended complaint.

### F.  The Plaintiffs Cannot Prevail On Their Civil Aiding And Abetting Claim

While a somewhat closer question, the Court is also satisfied that the undisputed material facts show that the Plaintiffs cannot prevail on their civil aiding and abetting claim against the BFS Defendants in Count VI of the amended complaint. A civil aiding and abetting claim requires that "the wrongdoer engag[es] in acts of encouragement or assistance to the person actually committing the wrongful act." *Saadeh v. Saadeh, Inc.*, 819 A.2d 1158, 1171 (Md. Ct. Spec. App. 2003). And so, "[t]o be liable in tort, the aider or abettor must have engaged in assistive conduct that he would know would contribute to the happening of that act." *Id.*

In their motion, the BFS Defendants argue that the Plaintiffs cannot prevail on the civil aiding and abetting claim brought against them, because there is no evidence to show that the BFS Defendants provided substantial assistance or encouragement to Conaway or Mr. Pacheco

21

to violate the law in connection with to the October 2, 2020, Accident.  ECF No. 124-4 at 27-29. While the Plaintiffs correctly observe that they need not show a violation of law to prevail on this claim, the unrebutted evidence, nonetheless, shows that the Plaintiffs cannot establish that the BFS Defendants assisted, or encourage either Conaway or Mr. Pacheco to engage in negligent driving.  Again, the undisputed material facts also show that the BFS Defendants had no role in hiring, training or supervising Mr. Pacheco. While the Plaintiffs argue that the BFS Defendants assisted in Mr. Pacheco's negligence, by hiring an unqualified and uninsured carrier to transport the roof trusses, the BFS Defendants' decision to retain Conaway is not sufficient to establish that these defendants provided substantial assistance or encouragement in connection with Mr. Pacheco's negligent driving during the October 2, 2020, Accident.  And so, the Court GRANTS the BFS Defendants' motion for summary judgment on the Plaintiffs' civil aiding and abetting claim in Count VI of the amended complaint.

### G.  Portions Of The Plaintiffs' Pecuniary Damages Claim Fail As A Matter Of Law

As a final matter, the Court GRANTS-in-PART and DENIES-in-PART the BFS Defendants' motion for summary judgment on the Plaintiffs' pecuniary damages claims in Count VII of the amended complaint.  As discussed above, the undisputed material facts in this case show that the Plaintiffs cannot prevail on the claims set forth in Counts I, III, V and VI of the amended complaint.  Given this, the BFS Defendants are entitled to summary judgment on the Plaintiffs' pecuniary damages claims associated with those claims.

But the Plaintiffs may be able to prevail on their remaining negligent hiring and retention claim against the BFS Defendants in Count II of the amended complaint.  And so, the Court DENIES the BFS Defendants' motion for summary judgment with respect to the pecuniary damages associated with that claim.

## V.   CONCLUSION

And so, for the foregoing reasons, the Court:

(1) **GRANTS-in-PART** and **DENIES-in-PART** the BFS Defendants' motion for summary judgment (ECF No. 124);

(2) **DENIES** the BFS Defendants' motion to exclude and/or strike the expert report of Rose A. McMurray **(**ECF No. 123);

(3) **ENTERS JUDGMENT** summarily in favor of the BFS Defendants on Counts I, III, V and VI of the amended complaint; and

(4) **DISMISSES** Counts I, III, V and VI of the amended complaint as to the BFS
Defendants.


**IT IS SO ORDERED.**


s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge